CENTRAL HOLDING CO. *v.* BUSHMAN.

GREEN *v.* CENTRAL HOLDING CO.

1. USURY — MORTGAGES — GRANTEE TAKING SUBJECT TO MORTGAGE MAY NOT RAISE QUESTION OF USURY—PERSONAL QUESTION.
   The grantee taking subject to mortgages, the amount of which was deducted from the purchase price and thus in effect appropriated for the payment of the mortgage debt, may not raise the question of usury in making the mortgage, which is personal to the mortgagors.

[1]Usury, 39 Cyc. pp. 999, 1062, 1068; 8 L. R. A. (N. S.) 814; 48 L. R. A. (N. S.) 840; 27 R. C. L. 288.

2. SAME — CUSTODIAN OF CONSTRUCTION FUND — ACCOUNTING — NOTICE.

The grantee may not compel the custodian of the construction fund provided by the mortgages to account for payments of claimed usurious items, where the status of these items had been fixed by contract and direction of the mortgagors at the time the deed was made, of which the grantee had notice.

3. SAME—RIGHT OF MORTGAGORS TO RAISE QUESTION OF USURY—DEFICIENCY—ESTOPPEL.

The mortgagors, who have conveyed the property subject to the mortgages, are not proper parties plaintiff in a suit to set aside the foreclosure, with the right to raise the question of usury in the making of the mortgages, on the theory that they will be liable for any deficiency, where the mortgagees have taken the position that the mortgagors are wholly without interest in the case, and are thereby estopped from taking any inconsistent position.

4. SAME — MORTGAGORS CONVEYING EQUITY OF REDEMPTION NOT INTERESTED IN FORECLOSURE.

Where the mortgagors conveyed their equity of redemption without making any reservation relative to alleged usury in the making of the mortgages, and the full amount thereof was deducted from the purchase price, they are without interest in a suit to set aside foreclosure on the ground of usury, since it is alike immaterial to them whether the mortgages are enforced or defeated.

5. SAME—CORPORATIONS—INTEREST AS STOCKHOLDER TOO REMOTE.

That one of the mortgagors had stock in the corporation to which they conveyed the mortgaged property, held, to be an interest too remote to have any bearing in a suit to set aside foreclosure on the ground of usury, where neither the mortgagors nor their grantee had a right to raise said question.

6. SAME—RIGHT TO RAISE QUESTION OF USURY.

Where neither the mortgagors nor their grantee had the right to raise the question of usury in a suit to set aside the foreclosure, said right does not arise by reason of their joining as plaintiffs in said suit.

7. CORPORATIONS—RECEIVERS—MISMANAGEMENT.

That a corporation's board of directors decided, on advice

---

²Usury, 29 Cyc. p. 1083 (Anno). ³Estoppel, 21 C. J. § 236; ⁴Mortgages, 27 Cyc. p. 1667; ⁵Id., 27 Cyc. p. 1667; ⁶Id., 27 Cyc. p. 1667; ⁷Corporations, 14a C. J. § 3166.

of reputable counsel, to prosecute rather than settle a suit to set aside foreclosure of mortgages, on the ground of usury, on property purchased by it subject to the mortgages, meritorious questions being involved, *held*, no evidence of mismanagement justifying appointment of receiver, although the bill was later dismissed.

8. SAME—FRAUD OF FORMER DIRECTORS INSUFFICIENT CAUSE FOR APPOINTING RECEIVER.

That former directors of a corporation had defrauded it, whereby causes of action had arisen in its favor, *held*, not to justify the appointment of a receiver, in the absence of a showing that the present board had refused or would refuse to take action, or that they had been requested to act thereon before filing a bill for the appointment of a receiver.

9. SAME—DISSENSION NOT SHOWN.

In the absence of proof of dissension among the directors of a corporation making it impossible for the corporation to carry on its business, a court of equity ought not to displace the board of directors by a receiver.

10. SAME—GRIEVANCES—REQUEST SHOULD BE MADE TO DIRECTORS FOR REDRESS.

Before a minority stockholder asks for the appointment of a receiver for a corporation because of the fraud and mismanagement of former directors and the demands in favor of the corporation by reason thereof, he should make reasonable efforts to procure the present directors to redress his grievances.

11. SAME—INDEBTEDNESS NO CAUSE FOR APPOINTING RECEIVER.

That a corporation has debts and obligations which it has not met, is not of itself ground for appointing a receiver.

12. SAME—NECESSITY FOR RECEIVER NOT SHOWN.

In the absence of a showing that a receiver may be better able than the directors to preserve the property of a corporation or to save it from the foreclosure of mortgages thereon, the necessity for the appointment of a receiver has not been made to appear.

Appeals from Wayne; Lamb (Fred S.), J., presid-

[8]Corporations, 14a C. J. § 3166 (Anno); [9]Id., 14a C. J. §§ 3159, 3167; [10]Id., 14a C. J. § 3184; [11]Id., 14a C. J. § 3173; [12]Id., 14a C. J. § 3159 (Anno).

ing.    Submitted January 28, 1927.    (Docket Nos. 28, 29.)    Decided April 1, 1927.

Bill by the Central Holding Company and others against Franklin E. Bushman and others for an accounting, and to enjoin the foreclosure of mortgages. From a decree dismissing the bill, plaintiffs appeal. Affirmed.

Bill by Alex C. Green against the Central Holding Company and others for the appointment of a receiver. From a decree for plaintiff, defendants appeal.    Reversed, and bill dismissed.

*Leo Wing,* for plaintiffs and defendants Central Holding Co. *et al.*

*Payne & Payne (Thomas W. Payne,* of counsel), for plaintiff Green.

*Wilkinson, Lowther, Wilkinson & O'Connell (George E. Nichols,* of counsel), for defendants Bushman.

*Brown & Kelly,* for defendant Grange Life Insurance Co.

*Monaghan, Crowley, Reilley & Kellogg,* for defendant Michigan Finance Corp.

CLARK, J.    Two causes in equity were consolidated and heard together.    The first challenges three mortgages as usurious and seeks appropriate relief.    Plaintiffs Harold R. Finn and his wife, Geraldine Finn, were the mortgagors.    After the indebtedness had been determined and properly evidenced and the mortgages given to secure the same, and after they had been recorded, the Finns conveyed the premises by warranty deed to Central Holding Company, a Michigan corporation.    The consideration recited in the deed is one dollar and other valuable considerations.    The deed excepts "mortgages of record," but it does not say that the grantee assumed or agreed to pay the

mortgage debt.    The corporation is joined with the
Finns as a plaintiff.    The defendants are the Grange
Life Insurance Company, mortgagee in a first mort-
gage to secure indebtedness in the sum of $260,000.
Michigan Finance Corporation, second mortgagee, in-
debtedness $110,000.    Franklin E. Bushman and
others, third mortgagees, indebtedness, $100,500.
There are other defendants to whom it is unnecessary
to refer.    Preparatory to giving the deed Harold
Finn caused the plaintiff corporation to be organized
with a capital stock of $1,000,000, and he became
president thereof.

The Finns' equity of redemption was valued at the
sum of $345,000 taken and accepted as "actual exist-
ing intrinsic value and stock was issued for that
amount," Finn receiving a large block of stock and
Mrs. Finn a smaller amount.    We quote from a brief:

"The Central Holding Company, in setting up its
capital account in connection with the transfer in ques-
tion, showed that it acquired the property including
land and apartment building at a figure of around
$835,000 and in that connection assumed the mortgages
against the property and some accounts payable and
issued the stock in question for the balance in the sum
of $345,000.    The opening entry of the books of the
Central Holding Company exemplifies the transaction
as one in which the mortgages were assumed by the
corporation.    On or about June 18, 1923, the Central
Holding Company applied to the Michigan securities
commission for the validation of its capital stock for
sale to the public.    $655,000 par value of this stock
was approved by the commission on June 18, 1923.
Upon the application and in granting the license, the
securities commission accepted as a fact that there was
in the property an actual value of $345,000 over and
above the incumbrances on the property.    The inquiry
of the commission was as to whether or not the equity
over and above the mortgages was $345,000."

It is established by the record that the plaintiff
corporation as grantee took subject to the mortgages

and that the full amount of the same was deducted from the purchase price.

The first mortgage to the Grange Life Insurance Company was a construction loan. This is true in a limited sense of the third mortgage. Franklin E. Bushman was custodian of the funds which he disbursed as the work progressed. At the time of the deed to plaintiff corporation, the building was not completed and a part of the funds provided remained in Bushman's hands, and at that time the amounts deducted from the face of these mortgages and retained by Bushman and others as bonus, commission, compensation and charges had been fully determined and settled by contracts with the Finns, and had been paid or appropriated. The amount then remaining to be paid on construction was then fixed and determined to the knowledge of the plaintiffs. Later Bushman, so far as we need be concerned here, disbursed the fund so remaining in construction agreeable to the contract.

The second mortgage was not a construction loan. It was given to provide funds to take up a mortgage on the lots on which the building was to be erected and in which lots the Finns had a comparatively small interest, and to satisfy a certain existing obligation of Finn. At the time of the hearing the second and third mortgages had been foreclosed by advertisement under the statute and sheriff's deeds upon the sales had been made and recorded. At the time of the hearing the first mortgage was being foreclosed in like manner. The bill was dismissed. Plaintiffs have appealed.

Plaintiff corporation, grantee of the mortgagors, may not here raise the question of usury. It took subject to the mortgages. The amount thereof was deducted from the purchase price, and in effect appropriated by the vendors, the Finns, for the payment of the mortgage debt. The question of usury is personal to the mortgagors. The rule is stated in 39 Cyc. p. 1068:

"But when it is manifest that the intention of the parties was that only the vendor's equity of redemption should pass to the purchaser, and the purchase-price had been reduced by the amount of the usurious lien, the transaction is equivalent to an appropriation by the vendor of a portion of the purchase-money for the payment of the usurious debt, and therefore a waiver of the defense of usury which estops third persons claiming under him to question the validity of the debt. * * * Nevertheless it must appear that a deduction has been made from the purchase price on account of the mortgage debt, in order to bring the case within the rules stated.   It is not sufficient to show merely that the sale was made subject to the mortgage.   It is not necessary that the intention to take subject to the incumbrance shall be expressly declared in the deed or contract.   It is sufficient if all of the circumstances of the transaction which may be shown by parol imply such an intent."

We quote syllabus of *Gray* v. *Lumber Co.*, 128 Mich. 427 (54 L. R. A. 731):

"A purchaser of mortgaged premises cannot object to the mortgage on the ground that usurious interest was exacted from his grantor, since the defense of usury is a personal one."

And from *Lee* v. *Stiger,* 30 N. J. Eq. 610, 611, cited in a note to 39 Cyc. *supra:*

"The reason of the rule is obvious.   The statute against usury is designed to give protection to the borrower against the greed of the lender, and not to afford any mere adventurer who may happen to slip into the seat of the borrower, a right to speculate on a violation of law which has done him no harm, and causes him no loss.   When the borrower sells his interest in the land he has pledged for the payment of a usurious debt, subject to that debt, he recognizes the validity of the debt, and waives the benefit of the statute.   After the party aggrieved has forgiven an injury, it would not be consonant with either justice or reason to allow a stranger to set it up for his own personal advantage.   The defendant has no right to display the wrongs of another as a means of relieving

her property from a burden it was understood it should bear at the time she acquired it."

And see *Sellers* v. *Botsford,* 11 Mich. 59; *Barney* v. *Tontine Surety Co.,* 131 Mich. 192; *Solomon* v. *Alpena Cedar Co.,* 194 Mich. 267; *Farmers & Mechanics' Bank* v. *Kimmel,* 1 Mich. 84; 27 R. C. L. p. 288; 48 L. R. A. (N. S.) 840, note; 21 A. L. R. 495, note; 8 L. R. A. (N. S.) 814, note.

It is contended that because there remained in Bushman's hands, at the time of the deed by the Finns to the plaintiff corporation, a part of the funds provided by the mortgages to be thereafter paid out in construction, Bushman may be compelled to account for payments of claimed usurious items.   When the deed was made the *status* of these items had been fixed by contract and direction of the mortgagors.   Some of the items were then in fact paid.   For a remaining major item a check had then been given and signed which, however, was paid after the deed was given. All this the plaintiffs then well knew.   The law above quoted and cited rules this contention against plaintiffs.

It is urged that plaintiffs Finn are proper parties plaintiff with right to raise the question of usury, as they will be liable for deficiency should the same be found upon foreclosure of the mortgages or any of them.   They will not be so liable.   The mortgagees are estopped to claim any such liability by reason of the position taken by them in this cause.   They have contended in pleading, proof, and argument that the Finns are wholly without interest in this case.   They are estopped later to take a contrary and inconsistent position.

When the Finns conveyed their equity of redemption to plaintiff corporation, there was no reservation or agreement by or between them relative to the alleged usury.   The full amount of the mortgages was deducted from the purchase price.   The Finns now

have no interest in the matter.   Whether the mortgage be enforced or defeated will be to them alike immaterial.   *Union National Bank* v. *International Bank,* 123 Ill. 510 (14 N. E. 859) ; *Merchants Exchange Nat. Bank* v. *Warehouse Co.,* 49 N. Y. 635, at page 642.

At the time of hearing this suit, Finn was not a stockholder in plaintiff company.   Mrs. Finn, in common with many others, owned some of the shares, but this remote interest is without bearing on the controversy here.   Each of the plaintiffs being without right to urge the question of usury, the right does not arise by reason of their joining as plaintiffs in this action.   Decree in this cause is affirmed, with costs to defendants.

The second cause is a bill for appointment of a receiver against Central Holding Company and others as defendants by Alex C. Green, a minority stockholder of the company, alleged to be on his own behalf and all other stockholders, as plaintiff.   An order was entered that defendants show cause on May 27, 1925.   On May 28, 1925, defendant corporation answered the bill and filed answer to the order to show cause.   Answers were filed by two other defendants. On that day an order consolidating this cause with the one first above discussed was made.   A receiver was not then appointed.   The causes, so consolidated, went to hearing on May 29th following, and the hearing was concluded on June 12th following.   On June 16th following decree was entered appointing a receiver, the court finding:

"The court being satisfied in premises that a receiver should be appointed for the preservation of the assets of the defendant company and for the best interests of the stockholders and creditors thereof."

Defendant corporation, at least, has appealed.

On February 29, 1925, an annual meeting of stockholders of defendant corporation was continued and

held.   Total stock represented was approximately 34,000 shares.   For election of five directors there were seven nominations.   Vidro, DuLac, Cook, Diebolt, and Kropp were elected, having approximately 29,000 votes, and plaintiff Green and Wilson received a little over 4,000 votes each.   The bill in this case was filed May 22, 1925.   There had been division of opinion relative to the prosecution of the suit above decided.   The election above stated was, in effect, in favor of its prosecution.   Of the filing of this bill plaintiff testified:

"*Q*. Now, you were rather of the opinion that by starting this suit you would get the same on for trial and have a receiver appointed prior to a trial of the case of Central Holding Company *v.* Bushman, weren't you?

"*A.* I hoped to accomplish that end, yes, sir.   And by doing so I thought the matter would be taken out of your hands (Mr. Wing, attorney for defendant company) and out of the hands of the board of directors now elected, and that settlement would be put through on the terms of the trustee, which would be satisfactory to him."

There is neither allegation nor proof that the present board of directors or its members, who had held office but a short time, have been guilty of any fraud or mismanagement.   It is charged that they are mere instruments of Finn and his associates, but of that charge there is a failure of proof.   That it was decided upon advice of reputable counsel to prosecute rather than settle the suit above decided is no evidence of mismanagement.   The cause involved meritorious questions.   That defendant corporation is insolvent is not argued in the briefs.   It does appear that at that time at least two of the mortgages on the property were being foreclosed and that there had been foreclosure sale, neither interest nor principal having been paid, and that interest was due and unpaid on another mortgage.   It may be inferred that there

were other debts.   The main feature of the bill for receiver is allegation that certain directors of the company, prior to the present board, especially Finn, had defrauded the company and mismanaged its affairs, and that on account thereof causes of action had arisen in favor of the company, and chiefly it is upon such fraud and misconduct of former directors of the company that plaintiffs' case for appointment of a receiver is based.   If the allegation be true, there is no showing that the present board of directors, without fault in that regard, had refused or would refuse to take action, no evidence that they had been requested to act before filing this bill.   There is no proof of dissension among the directors making it impossible for the corporation to carry on its business.   In these circumstances we think a court of equity ought not to displace the board of directors by a receiver.   It is said in 14A C. J. p. 944:

"As a rule of equity practice, the courts are very reluctant to appoint receivers, upon the idea that it is a practical displacement of the board of directors. It is an assumption of the functions of the directors. It displaces the board of managers placed there by the stockholders who sustain the relation of trustees for the stockholders, trustees for the corporation, and trustees for its creditors; and before the court will take charge of the corporation, and thus displace its chosen directors and managers, it ought to have the clearest evidence of the absolute necessity for such extraordinary action for the protection of the creditors, stockholders, and all parties concerned."

Before plaintiff, a minority stockholder, may ask a receiver for the corporation because of fraud and mismanagement of former directors and the demands in favor of the company by reason thereof, he should have made reasonable efforts to procure the present directors to redress his grievances.   High on Receivers (4th Ed.), p. 358.   That the corporation has debts and obligations which it has not met, is not

of itself ground for appointing a receiver.    14A. C.
J. p. 956.

It is not pointed out that the receiver may be better
able than the directors to preserve the property of the
corporation, or to save it from the foreclosure of the
mortgages.    The necessity of appointing a receiver
is not made to appear.

The decree in the second cause is reversed, and the
bill is dismissed, with costs to the defendants.

SHARPE, C. J., and BIRD, SNOW, STEERE, FELLOWS,
WIEST, and McDONALD, JJ., concurred.